**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-2070**

───────────────

DISABILITY RIGHTS SOUTH CAROLINA; ABLE SOUTH CAROLINA; AMANDA MCDOUGALD SCOTT, individually and on behalf of P.S., a minor; MICHELLE FINNEY, individually and on behalf of M.F., a minor; LYUDMYLA TSYKALOVA, individually and on behalf of M.A., a minor; EMILY POETZ, individually and on behalf of L.P., a minor; SAMANTHA BOEVERS, individually and on behalf of P.B., a minor; TIMICIA GRANT, individually and on behalf of E.G., a minor; CHRISTINE COPELAND, individually and on behalf of L.C., a minor; HEATHER PRICE, individually and on behalf of H.P., a minor; CATHY LITTLETON, individually and on behalf of Q.L., a minor,

　　　　　　Plaintiffs - Appellees,

　　　　v.

HENRY DARGAN MCMASTER, in his official capacity as Governor of South Carolina; ALAN WILSON, in his official capacity as Attorney General of South Carolina,

　　　　　　Defendants - Appellants,

　　　　and

MOLLY SPEARMAN, in her official capacity as State Superintendent of Education; GREENVILLE COUNTY SCHOOL DISTRICT; HORRY COUNTY SCHOOL DISTRICT; LEXINGTON COUNTY SCHOOL DISTRICT ONE; OCONEE COUNTY SCHOOL DISTRICT; DORCHESTER COUNTY SCHOOL DISTRICT TWO; CHARLESTON COUNTY SCHOOL DISTRICT; PICKENS COUNTY SCHOOL DISTRICT,

　　　　　　Defendants.

------------------------------

AMERICAN ACADEMY OF PEDIATRICS; SOUTH CAROLINA CHAPTER OF AMERICAN ACADEMY OF PEDIATRICS; UNITED STATES OF AMERICA,

        Amici Supporting Appellees.

------

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Mary G. Lewis, District Judge.  (3:21-cv-02728-MGL)

------

Argued:  December 9, 2021                    Decided:  January 25, 2022

------

Before NIEMEYER, WYNN, and THACKER, Circuit Judges.

------

Vacated in part, remanded with instructions by published opinion.  Judge Thacker wrote the opinion, in which Judge Niemeyer joined.  Judge Wynn wrote a dissenting opinion.

------

**ARGUED:**  William Grayson Lambert, OFFICE OF THE GOVERNOR OF SOUTH CAROLINA, Columbia, South Carolina, for Appellants.  John A. Freedman, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellees.  **ON BRIEF:**  Alan Wilson, Attorney General, Robert D. Cook, Solicitor General, J. Emory Smith, Jr., Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellant Attorney General Wilson.  Thomas A. Limehouse, Jr., Chief Legal Counsel,  Michael G. Shedd, Deputy Legal Counsel, OFFICE OF THE GOVERNOR OF SOUTH CAROLINA, Columbia, South Carolina, for Appellant Governor McMaster.  David Allen Chaney Jr., AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA, Charleston, South Carolina; Adam Protheroe, SOUTH CAROLINA APPLESEED LEGAL JUSTICE CENTER, Columbia, South Carolina; B. Randall Dong, Anna Maria Conner, Amanda C. Hess, DISABILITY RIGHTS SOUTH CAROLINA, Columbia, South Carolina; Rita Bolt Barker, WYCHE, P.A., Greenville, South Carolina; Elisabeth S. Theodore, Anthony J. Franze, Tara Williamson, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C.; Louise Melling, Jennesa Calvo Friedman, New York, New York, Susan Mizner, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, San Francisco, California, for Appellees.  Jeffrey B. Dubner, Jessica Anne Morton, Samara M. Spence, Sean A. Lev, DEMOCRACY FORWARD FOUNDATION, Washington, D.C., for Amici South Carolina Chapter of American Academy of Pediatrics and American Academy of Pediatrics.  Kristen Clarke, Assistant Attorney General, Bonnie I. Robin-Vergeer, Alisa C. Philo, Sydney A.R. Foster, Appellate Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE,

2

Washington, D.C.; Elizabeth M. Brown, General Counsel, Francisco Lopez, Mary Rohmiller, Office of the General Counsel, UNITED STATES DEPARTMENT OF EDUCATION, Washington, D.C.; M. Rhett DeHart, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Amicus United States.

--------------------

THACKER, Circuit Judge:

The South Carolina legislature included a provision in the South Carolina state budget that prohibits school districts from using appropriated funds to impose mask mandates. Nine parents of students with disabilities who attend South Carolina public schools and two disability advocacy organizations filed suit against seven school districts, the state superintendent of education, the governor, and the attorney general to challenge this law. The district court granted a preliminary injunction enjoining the law's enforcement, and the governor and the attorney general appealed.

Because we conclude that the parents and the disability advocacy organizations lack standing to sue the governor and the attorney general, we vacate the district court's order granting the preliminary injunction as to those defendants and remand with instructions to dismiss them from this case.

I.

In the appropriations act for the 2021–2022 fiscal year, the South Carolina General Assembly included a budget proviso that precludes primary and secondary schools' use of appropriated funds to impose mask mandates for students and staff:

> No school district, or any of its schools, may use any funds appropriated or authorized pursuant to this act to require that its students and/or employees wear a facemask at any of its education facilities. This prohibition extends to the announcement or enforcement of any such policy.

4

Act of June 21, 2021, pt. IB, § 1.108, 2021 S.C. Acts 1, 256 (the "Proviso"); *see* J.A. 144.[1]

For the school year immediately preceding the Proviso's enactment -- that is, the 2020–2021 school year -- the South Carolina Department of Education instituted a policy "requiring face coverings to be worn on school buses and within public school facilities." S.C. Dep't of Educ. Face Covering Guidelines for K-12 Public Schools (Aug. 3, 2020), https://ed.sc.gov/state-board/state-board-of-education/additional-resources/south-carolina -department-of-education-face-covering-guidelines-for-k-12-public-schools/. Shortly after the Proviso was ratified, however, South Carolina Superintendent of Education Molly M. Spearman ("Spearman") issued a memorandum to the superintendents of local school districts that explained, "The South Carolina Department of Education . . . interprets the [Proviso] to mean that school districts are prohibited from requiring students and employees to wear a facemask while in any of its educational facilities for the 2021–2022 school year. . . . [D]istricts may not create or enforce any policy[] which would require the wearing of face coverings." J.A. 146.

Despite the Proviso and Spearman's interpretation of it, some school districts continued to follow universal masking requirements, consistent with medical guidance from the federal Centers for Disease Control and Prevention. In response, South Carolina Attorney General Alan Wilson ("Wilson") filed suit against the City of Columbia, South Carolina, asserting that its ordinances requiring masks to be worn in primary and secondary schools violated the Proviso. *See Wilson* ex rel. *State v. City of Columbia*, 863 S.E.2d 456

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

(S.C. 2021). The Supreme Court of South Carolina held that the Proviso was a valid exercise of the South Carolina General Assembly's legislative power and struck down the ordinances as inconsistent with the Proviso because "the enforcement provisions in the . . . ordinances make clear that school personnel -- paid at least in part with 'funds appropriated or authorized pursuant to the [2021–2022 Appropriations Act]' -- are responsible for enforcing the . . . mask mandate." *Id.* at 461, 462–63. The court nonetheless left open "the possibility that a local government could impose a mask mandate without contravening [the Proviso]." *Id.* at 461.

Thereafter, a local school district, Richland County School District Two, which had not itself imposed a mask mandate but was subject to the ordinances struck down in *Wilson*, also filed suit challenging the Proviso. *See Richland Cnty. Sch. Dist. 2 v. Lucas*, 862 S.E.2d 920 (S.C. 2021). At issue in *Richland* was whether the Proviso prevented the school district "from (1) apportioning its budget so that any mask requirement is funded by federal or local funds, (2) functionally announcing and enforcing a mask requirement without using any funding whatsoever, and (3) designating an employee or series of employees to enforce mask requirements who would be paid exclusively with federal or local funds." *Id.* at 924. The Supreme Court of South Carolina reiterated its *Wilson* holdings and specifically explained, "[The Proviso] prohibits the use of funds appropriated or authorized by the 2021–2022 Appropriations Act to announce or enforce a mask mandate. . . . [W]e do not reject the possibility that funds not appropriated or authorized by that act may be used to announce or enforce a mask mandate." *Id.*

6

On August 24, 2021, before the Supreme Court of South Carolina issued its decisions in *Wilson* and *Richland*, two nonprofit advocacy organizations for individuals with disabilities -- Disability Rights South Carolina and Able South Carolina -- and nine parents of students with disabilities who attend South Carolina public schools (collectively, "Appellees") brought this action against Spearman, Wilson, seven local school districts -- the Greenville County School District, the Horry County School District, Lexington County School District One, the Oconee County School District, Dorchester County School District Two, the Charleston County School District, and the Pickens County School District -- and South Carolina Governor Henry McMaster ("McMaster"), seeking to enjoin the Proviso's enforcement.  Appellees contend that the Proviso prohibits local school districts from imposing mask mandates, which violates Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act because children with disabilities are at increased risk of severe symptoms from COVID-19 compared to other children, and without mask mandates for students and staff, children with disabilities cannot safely attend in-person schooling and are deprived of its benefits.

Several weeks after the Supreme Court of South Carolina issued its opinion in *Wilson*, and two days before it issued its opinion in *Richland*, the district court in this case granted Appellees' request for a preliminary injunction and enjoined the named defendants from enforcing the Proviso.  McMaster and Wilson (collectively, "Appellants") -- but none of the other named defendants -- timely appealed the district court's order.

7

II.

Our "judicial Power" extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" that "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To satisfy the irreducible constitutional minimum of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (alterations and internal quotation marks omitted). Appellees, as "the part[ies] invoking federal jurisdiction, bear[] the burden of establishing these elements." *Spokeo, Inc.*, 578 U.S. at 338.

The existence of standing is a legal issue that we review de novo. *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (citing *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019)). "When a question of standing is apparent, but was not raised or addressed in the lower court,[2] it is our responsibility to raise and decide the issue sua

---

2 Before the district court granted Appellees' motion for preliminary injunction, Wilson moved to dismiss this action for lack of standing, but the district court denied his motion. *Disability Rights S.C v. McMaster*, No. 3:21-cv-02728-MGL, 2021 WL 4449446 (D.S.C. Sept. 28, 2021). The district court held that Appellees' alleged injuries were "fairly traceable" to Wilson "due to his enforcement of [the Proviso]" via a letter he wrote to the City of Columbia threatening legal action against the ordinances that were the subject of the *Wilson* case before the Supreme Court of South Carolina. *Id.* at *3. The district court also held, without further elaboration, that "a partial remedy for plaintiffs will satisfy the redressability prong here." *Id.* (citing *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021)). Wilson has not appealed the district court's order. *See* J.A. 297–98. However, since Appellants filed their notice of appeal, they both have filed motions to dismiss (Continued)

8

sponte." *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005)). "If we conclude that [Appellees'] lack of standing deprived the district court of jurisdiction, 'we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.'" *Id.* (quoting *Stephens v. City of Albemarle*, 524 F.3d 485, 490 (4th Cir. 2008)).

### III.

Appellees do not have standing to pursue this action against Appellants. Even assuming Appellees possess standing against some of the individuals and entities named as defendants in this case, the standing inquiry must be evaluated separately as to each defendant. *See Bostic v. Schaefer*, 760 F.3d 352, 370–71 (4th Cir. 2014) ("The Plaintiffs' claims can therefore survive Schaefer's standing challenge as long as one couple satisfies the standing requirements with respect to each defendant."); *see also Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("Article III standing to sue each defendant . . . requires a showing that each defendant caused [the plaintiff's] injury and that an order of the court against each defendant could redress the injury." (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992))); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012)

---

Appellees' claims against them that assert lack of standing as a reason for dismissal. Governor McMaster's Motion to Dismiss Plaintiffs' Amended Complaint at 6–8, *Disability Rights S.C. v. McMaster*, No. 3:21-cv-2728-MGL (D.S.C. filed Oct. 22, 2021); Motion of Attorney General to Dismiss Amended Complaint at 1, *Disability Rights S.C. v. McMaster*, No. 3:21-cv-2728-MGL (D.S.C. filed Oct. 29, 2021). Those motions remain pending before the district court.

9

(rejecting plaintiff's argument that "Article III . . . permits suits against non-injurious defendants as long as one of the defendants in the suit injured the plaintiff").

Appellees assert that the Proviso has injured them by increasing the risk that their disabled children will contract COVID-19, denying their children meaningful access to in-person education, and causing them to enroll their children in private schools that are not subject to the Proviso.[3]  Although Appellees have alleged a nexus between their claimed injuries and the Proviso -- at least prior to the Supreme Court of South Carolina's decisions in *Wilson* ex rel. *State v. City of Columbia*, 863 S.E.2d 456 (S.C. 2021), and *Richland County School District 2 v. Lucas*, 862 S.E.2d 920 (S.C. 2021) -- they have not established that such injuries are fairly traceable to Appellants' conduct or would be redressed by a favorable ruling against Appellants.

A.

Traceability

A plaintiff's injury satisfies the traceability element of standing when there is "a causal connection between the injury and the [defendant's] conduct complained of by the plaintiff." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (internal

---

[3] Appellees' claimed injuries focus on the plaintiff parents.  Appellees do not endeavor to explain how the two plaintiff nonprofit disability advocacy organizations have been injured or have standing to sue.  Still, "once it is established that at least one party has standing to bring the claim, no further inquiry is required as to another party's standing to bring that claim." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 209 (4th Cir. 2020) (citing *Horne v. Flores*, 557 U.S. 433, 446–47 (2009); *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981)).  We therefore do not analyze whether the plaintiff organizations have standing to bring this action.

10

quotation marks omitted).  "While the defendant's conduct need not be the last link in the causal chain, the plaintiff must be able to demonstrate that the alleged harm was caused by the defendant, as opposed to the 'independent action of some third party not before the court.'"  *Id.* (quoting *Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 234 (4th Cir. 2005)).

Appellees' traceability arguments focus on Superintendent of Education Spearman, who "directed that, pursuant to [the Proviso], 'school districts are *prohibited* from requiring students and employees to wear a facemask while in any of its educational facilities for the 2021-22 school year,'" and one of the defendant school districts, the Greenville County School District, which "directly attributed its no-mask requirement to [the Proviso]." Appellees' Resp. Br. at 22.  Critically, however, unlike the defendants that Appellees focus on, Appellants have not taken any action enforcing the Proviso relative to Appellees -- and Appellees do not assert that they plan to.

### 1.

Appellees' complaint alleges that McMaster signed the appropriations act containing the Proviso and "has publicly advocated for [the Proviso] to remain in effect and be vigorously enforced." J.A. 32.  As we have made clear in the Eleventh Amendment context, however, "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."  *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979)).  The same is true with respect to "[t]he fact that [the governor] has publicly endorsed and defended the

11

challenged statutes." *Id.* Rather, in order to be a proper defendant in an action to enjoin an allegedly unconstitutional state law, the governor must have "a specific duty to enforce" that law. *Id.*; *see Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) ("The *Ex parte Young* exception to Eleventh Amendment immunity applies only where a party 'defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional' has 'some connection with the enforcement of the act.'" (quoting Ex parte *Young*, 209 U.S. 123, 157 (1908))).

These principles apply with equal force in the standing context. *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) ("The requirements of *Lujan* are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute."). To establish standing, "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury *as a result of the statute's operation or enforcement*." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (emphasis supplied) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). When a defendant has no role in enforcing the law at issue, it follows that the plaintiff's injury allegedly caused by that law is not traceable to the defendant.

The dissent suggests that we should reject McMaster's assertion that he has no authority to enforce the Proviso because McMaster has also argued in this appeal that he would be irreparably harmed by an injunction barring the Proviso's enforcement. *Post* at 34–35. The dissent views this argument as an "admission" that McMaster can enforce the Proviso. *Id.* But even if we accept this so-called "admission," it is based on nothing more

12

than McMaster's status as the Governor of South Carolina and his general duty to execute state laws.  As we have just explained, and as the dissent recognizes, *see id.* at 33, this general duty does not make McMaster a proper defendant in this action.

Moreover, the dissent overlooks the most critical fact in the case at this point -- Appellees bear the burden to demonstrate that they have standing to sue McMaster. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  And they have failed to do so.  Appellees do not even purport to allege that McMaster has any duty to enforce the Proviso or that he has attempted to enforce it in a manner that directly affects them.  They certainly do not argue, as the dissent does, that there are unresolved factual issues or questions of state law that first need to be evaluated by the district court before we can determine that McMaster is not equipped with the authority to enforce the Proviso.  Therefore, Appellees have not demonstrated that their alleged injuries caused by the Proviso are fairly traceable to McMaster.

2.

By contrast, Appellees' complaint alleges that Wilson has authority to enforce the Proviso and has filed suit against the City of Columbia to declare its ordinances imposing mask mandates in primary and secondary schools invalid because of the Proviso.  J.A. 32; *see Wilson* ex rel. *State v. City of Columbia*, 863 S.E.2d 456 (S.C. 2021).  But, significantly, the City of Columbia was not a defendant in this action below, and counsel for Appellees acknowledged at oral argument that none of the plaintiff parents in this case have children who attend school there.  Oral Argument at 35:27–35:53, *Disability Rights S.C. v. McMaster*, No. 21-2070 (4th Cir. Dec. 9, 2021), http://www.ca4.uscourts.gov/oral-

13

argument/listen-to-oral-arguments. Appellees have also not alleged that any of the districts where their children attend school have rescinded a mask mandate pursuant to a threat from Wilson that he would seek to enforce the Proviso to void that mask mandate.

The dissent asserts that we "fail[] to appreciate the predictable chilling effect" that Wilson's enforcement of the Proviso against the City of Columbia has on other school districts that seek to impose mask mandates. *Post* at 32 n.8. But the dissent's contention "that Wilson's efforts to enforce the Proviso for some districts chilled other school districts from imposing their own mask mandates," *id.*, has not borne out to be true. As detailed below, to date, very few school districts in South Carolina have implemented mask mandates, even after the district court in this case enjoined the Proviso's enforcement. This indicates that the claimed "chilling effect" is not as strong as the dissent suggests.

When a criminal statute is at issue, a plaintiff has standing to sue if he shows that "there exists a credible threat of prosecution" pursuant to that statute. *Babbitt*, 442 U.S. at 298. However, "imaginary or speculative" fears of prosecution are not sufficient to convey standing. *Id.* Although the Proviso is not a criminal statute, these principles are nonetheless pertinent in this case. Essentially, Appellees have not demonstrated a "credible threat" that Wilson will enforce the Proviso in a manner that directly affects them. Therefore, even if we agree with the dissent that Wilson has made some implausible arguments about his ability or intentions to enforce the Proviso, the connection between Appellees' claimed injuries and Wilson's enforcement of the Proviso against the City of Columbia is weak, and Appellees have not established that those claimed injuries are fairly traceable to Wilson.

14

B.

Redressability

"An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)), *cert. denied*, 572 U.S. 1015 (2014).  A plaintiff's burden to establish redressability "is not onerous": he must only "show that [he] personally would benefit in a tangible way from the court's intervention." *Deal*, 911 F.3d at 189 (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)).  To that end, "[t]he removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." *Id.* at 190 (quoting *Sierra Club*, 899 F.3d at 285).  But redressability is "problematic when third persons not party to the litigation must act in order for an injury to arise or be cured." *Doe*, 713 F.3d at 755.

An order enjoining Appellants' enforcement of the Proviso would not redress Appellees' claimed injuries.  As we have already explained, McMaster has no responsibility for enforcing the Proviso, so such an order would have no effect on his conduct.  And Wilson has neither implemented nor threatened to implement his enforcement authority against the districts where Appellees' children attend school, so it is wholly speculative that proscribing his ability to enforce the Proviso would cause the school districts where Appellees' children attend school to impose mask mandates and thereby enable Appellees' children to return to classes in person.

15

In fact, counsel for Appellants represented at oral argument that even with the injunction in place, the overwhelming majority of school districts in South Carolina have not imposed universal masking for students and staff. Oral Argument at 54:15–54:30, *Disability Rights S.C. v. McMaster*, No. 21-2070 (4th Cir. Dec. 9, 2021), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. Appellees' children do not attend school in any of the districts that have imposed mask mandates since the injunction was issued, although two children have returned to in-person schooling as a result of a "citywide [mask] mandate." *See* Appellees' Resp. Br. at 25. This suggests that the Proviso -- and Wilson's onetime enforcement of it against a municipality where none of Appellees' children attend school -- is not the significant barrier to universal masking in the schools Appellees' children attend that Appellees contend it is.

Moreover, as the Supreme Court of South Carolina made clear in *Wilson* and *Richland*, the Proviso does not prohibit a school district from imposing a mask mandate. This, of course, is contrary to Appellees' interpretation of the Proviso in their complaint, which was filed before the decisions in those cases were issued. But consistent with that interpretation, Appellees sought, in part, relief preventing Appellants from "prohibiting school districts from requiring masks for their students and staff" via their enforcement of the Proviso. J.A. 57. Arguably, *Wilson* and *Richland* have already provided Appellees this relief: Following these decisions, a school district can, in fact, use funds other than those appropriated in the 2021–2022 appropriations act to implement a mask mandate. Indeed, at least one school district -- the Charleston County School District, which was named as a defendant below -- has done so, although its initial mask mandate was lifted beginning

16

November 10, 2021. *See* Update on CCSD Board of Trustees' Decision About Face Coverings, Charleston County School District (last visited Jan. 13, 2022), https://www.ccsdschools.com/site/default.aspx?PageType=3&DomainID=4&ModuleInst anceID=488&ViewID=6446EE88-D30C-497E-9316-3F8874B3E108&RenderLoc=0&Fl exDataID=32769&PageID=1.  In response to increasing COVID-19 cases in the area, the Charleston County School District also imposed a temporary mask mandate in effect from January 4 until January 14, 2022. *See* Facemasks Enforcement, Charleston County School District (last visited Jan. 13, 2022), https://www.ccsdschools.com/facemasks.  Clearly, the school districts where Appellees' children attend school have chosen not to impose ongoing mask mandates.  This demonstrates that ultimately, the injunction enjoining Appellants' enforcement of the Proviso has not served to return Appellees' children to the classroom, which is the only way Appellees assert their claimed injuries can be redressed.  Therefore, Appellees have not established that an order enjoining Appellants' enforcement of the Proviso would redress their claimed injuries.

## IV.

For the foregoing reasons, we vacate the district court's order as it relates to Appellants and remand this action to the district court with instructions to dismiss Appellees' claims against Appellants for lack of standing.

*VACATED IN PART, REMANDED WITH INSTRUCTIONS*

17

WYNN, Circuit Judge, dissenting:

The Appellants in this matter are Henry McMaster in his capacity as the Governor of South Carolina and Alan Wilson in his capacity as Attorney General for South Carolina ("McMaster and Wilson"). The Appellees in this matter are disability-rights groups, parents, and South Carolina public school students with medical disabilities, but like my colleagues in the majority, I address only whether the plaintiff-parents have standing to sue individually and on behalf of their children ("Parents"). *See* Majority Op. at 10 n.3 ("Appellees do not endeavor to explain how the two plaintiff nonprofit disability advocacy organizations have been injured or have standing to sue.").

McMaster and Wilson urge us to conclude that the Parents lack standing to sue them. But McMaster and Wilson's inconsistent—and demonstrably false—arguments must be rejected. Because I believe that the Parents have standing to enjoin McMaster and Wilson from enforcing a clearly discriminatory budget proviso, I must, respectfully, dissent.

I.

To establish standing, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)).

18

The Parents persuasively allege that they and their children are injured by South Carolina budget proviso § 1.108 ("the Proviso").[1] The Proviso states that "[n]o school district, or any of its schools, may use any funds appropriated or authorized pursuant to [the 2021–2022 Appropriations Act] to require that its students and/or employees wear a facemask at any of its education facilities."[2] 2021 S.C. Acts No. 94, pt. IB, § 1.108. This prohibition also extends "to the announcement or enforcement of any such policy." *Id.*

The Parents produced convincing record evidence showing that (1) a prohibition on mask mandates increases their children's risk of contracting COVID-19; and (2) disabled students like the Parents' children are more susceptible to contract and suffer serious effects from COVID-19. Under our precedent, there is "no doubt" that this "increased risk . . . constitutes cognizable harm."[3] *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc); *see also, e.g.*, *ARC of Iowa*

---

[1] The majority opinion does not dispute that the Parents have alleged an adequate injury. *See* Majority Op. at 10.

[2] Though the Proviso refers to "school district[s]" *and* "schools," I refer to them collectively as "school districts."

[3] The Parents also allege that the Proviso effectively denies disabled students meaningful access to in-person education and financially harms parents by forcing them to enroll their children in more expensive schools. They claim that these injuries are "independent" of the increased risk of contracting COVID. Response Br. at 21. Not so. If there was no increased threat of contracting COVID, then the Parents could not manufacture an "independent" injury by pulling their children out of class or enrolling them in different schools. Of course, there could be other reasons parents might make such decisions that would support an injury, but the Parents have not alleged any such reasons. *Cf. Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018) (noting, in the First Amendment Establishment Clause context, that a student's "feelings of marginalization" by a school can "constitute an independently actionable injury").

*v. Reynolds*, No. 4:21-CV-00264, 2021 WL 4166728, at *7 (S.D. Iowa Sept. 13, 2021) (finding disabled students alleged a "concrete and particularized injury" from the operation of a ban on school mask mandates).

McMaster and Wilson wisely focus their arguments instead on the causation and redressability requirements. After all, "when the plaintiff is not himself the object of the government action or inaction he challenges," causation and redressability are "ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (citation and internal quotation marks omitted). That is the situation here: the Parents are complaining about the Proviso's regulation of third parties—the school districts—not the Proviso's regulation of the Parents or their children directly.

But while it may be more difficult to establish causation and redressability in such a situation, "standing is not precluded." *Id.* In fact, it is well established that a plaintiff may properly allege an "injury produced by *determinative or coercive effect* upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (emphasis added). This coercive effect need not be certain to succeed; so long as a plaintiff can show that that their injury flows from "the *predictable* effect of Government action on the decisions of third parties," the elements of standing are satisfied. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) (emphasis added). And it is certainly "predictable" here that school districts forbidden from using state funds to impose mask mandates will not impose such mandates—especially when Attorney General Wilson has already demonstrated a marked willingness to sue to enforce compliance with the Proviso.

20

Nonetheless, McMaster and Wilson counter that this relatively straightforward conclusion is improper for three reasons. None are persuasive.

A.

McMaster and Wilson first claim that the Proviso does not do what it was clearly intended to do: bar school districts from requiring, announcing, or enforcing mask mandates *period*. They seize on the fact that the Proviso, by its terms, "prevents *only* the use of *state*-authorized or -appropriated funds to announce o[r] enforce [mask] mandates." Opening Br. at 13 (emphases added). Thus, according to McMaster and Wilson, school districts still have the option of using "*federal* or *local* funds, rather than *state* funds, if they [wish] to enforce a mask mandate." Reply Br. at 7 (emphases added). And since the "Proviso does not actually prohibit all mask mandates in public schools," they argue that we cannot trace the Parents' injuries to McMaster and Wilson's enforcement of the Proviso or find those injuries would likely be redressed by enjoining said enforcement. Opening Br. at 13–14.

This argument is flatly inconsistent with prior statements made by nearly every entity to consider the Proviso. To start, Harvey Peeler, Jr., President of the South Carolina Senate, and Jay Lucas, Speaker of the South Carolina House, have stated that the Proviso— which is fittingly entitled a "Mask Mandate Prohibition," 2021 S.C. Acts No. 94 § 1.108— "is clear and unambiguous": it "*prohibits face-covering mandates* in public schools no matter where in the state they are located," J.A. 200 (emphasis added). Similarly, the U.S. Secretary of Education believes the Proviso categorically "*prohibit[s]* local [school districts] from adopting requirements for the universal wearing of masks." J.A. 214

21

(emphasis added). So does South Carolina's Director of Health and Environmental Control. *See* J.A. 40 (observing that the Proviso "*prohibits* the implementation of mask mandates in schools" (emphasis added)).

Even the other defendants in the case below—South Carolina Superintendent of Education Molly Spearman and several school districts—have interpreted the Proviso "to mean that school districts are *prohibited* from requiring students and employees to wear a facemask while in any of its educational facilities for the 2021–22 school year." J.A. 146 (statement of Superintendent Spearman) (emphasis added); *accord Safe Return to In-Person Instruction & Continuity of Services Plan*, Greenville Cnty. Sch. Dist. (2021), https://www.greenville.k12.sc.us/greerhs/Upload/Uploads/SafeReturntoInPersonInstructi on82020[1].pdf ("[M]asks cannot be required under a State Budget Proviso."); *Back-to-School 2021-22 FAQs*, Horry Cnty. Schs. (Aug. 26, 2021), https://www.horrycounty schools.net/Page/16552 ("According to South Carolina Law (Proviso 1.108), neither students nor employees can be required by a public school district to wear a face mask at any of its educational facilities.").

Governor McMaster and Attorney General Wilson are not exceptions. For months, they argued in letters, public statements, and legal filings—including documents filed with the court below—that the "Proviso simply prohibits mask mandates in public schools." D. Ct. Docket No. 58 at 2–3 (Governor McMaster legal memorandum) (emphasis omitted);[4]

---

[4] "D. Ct. Docket No. ___" refers to documents filed in the underlying matter, *Disability Rts. S.C. v. McMaster*, No. 3:21-02728-MGL (D.S.C.).

22

*accord* D. Ct. Docket No. 55 at 6 (Attorney General Wilson legal memorandum) ("Proviso 1.108 . . . prohibits mask mandates by school districts."); *see also* J.A. 114 ("The terms of the Proviso . . . overwhelmingly demonstrate the legislature's intent that schools funded with State appropriations must not impose or implement mask mandates." (quoting Attorney General Wilson's Pet. for Original Jurisdiction and Expedited Consideration at 13, *Wilson ex rel. State v. City of Columbia*, 863 S.E.2d 456 (S.C. 2021) (No. 2021-000889) [hereinafter "Wilson Petition"])); J.A. 107 ("The Proviso is quite clear that masks are not to be mandated by government for the schools of this State." (quoting Wilson Petition at 6)); J.A. 192 (statement of Governor McMaster) ("State law now prohibits school administrators from requiring students to wear a mask.").

The reason why all these sophisticated parties believed—and evidently still believe, *see infra*—that the Proviso effectively bans mask mandates is obvious: while the Proviso may only bar the use of state funding for mask mandates, it is "nearly impossible to entirely separate activity within public schools from state-appropriated funds." Meg Kinnard, *Gov: SC Law 'Very Clear' in Banning School Mask Mandates*, Associated Press (Aug. 6, 2021), https://apnews.com/article/business-health-coronavirus-pandemic-only-on-ap-d59d210e3 0de0b7b39a3b8b9d4666437 (paraphrasing Governor McMaster); *see also* J.A. 188–97 (media sources discussing the purpose of the Proviso as expressed by Governor McMaster).

Governor McMaster recognized as much in filings with the district court, where he acknowledged that "while it is theoretically possible that a local government could impose a mask mandate without running afoul of the Proviso, practically speaking, *virtually any*

23

*enforcement or announcement of a mask mandate in a public school would require some use of state-appropriated funds*." D. Ct. Docket No. 58 at 3 n.1 (emphasis added).

Similarly, in briefing before the Supreme Court of South Carolina, Attorney General Wilson wrote that "[t]he Proviso *cannot be avoided* through a bookkeeping ploy such as the use of federal or local funds." Brief for Petitioner at 6, *Wilson*, 863 S.E.2d 456 (No. 2021-000889) (emphasis added); *accord id.* at 14 ("Other funds such as federal monies or local revenues or the provision of masks cannot circumvent the prohibition of a mask mandate."); *see also* J.A. 114 (arguing that the "expenditure of public funds will necessarily be involved in a school district's" attempt to enforce a City of Columbia mask mandate, "even if the City provide[d] the masks" to the schools (quoting Wilson Petition at 13)). He further argued that "[i]f Petitioners *could* evade the Proviso, based upon a bookkeeper's tracing of the funding source, the law would be *eviscerated* and the appropriations power marginalized." Brief for Amicus Att'y Gen. Wilson at 5, *Richland Cnty. Sch. Dist. 2 v. Lucas*, 862 S.E.2d 920 (S.C. 2021) (No. 2021-000892) (emphases added). Thus, if we take McMaster and Wilson at their word, the Proviso *is* the source of the Parents' injuries because it forbids school districts from enforcing *virtually any* mask mandate and "cannot be avoided through the back door" use of federal or local funding. *Id.*

Fast-forward a few months and McMaster and Wilson now claim that the "Proviso does not actually prohibit all mask mandates in public schools," Opening Br. at 13, and that given the availability of "federal and local funds, it is hard to fathom that a [school] district that wanted to enact a mask mandate could not do so," Reply Br. at 12 n.2. According to McMaster and Wilson, the reason for this stunning 180-degree reversal is the

24

Supreme Court of South Carolina's decision in *Richland County School District 2 v. Lucas*. There, the court rejected a state constitutional challenge to the Proviso. 862 S.E.2d at 924. Along the way, it *declined* to hold that school districts could impose mask mandates "funded by federal or local funds"; instead, it simply noted that its opinion did "*not reject the possibility* that funds not appropriated or authorized by [the 2021–2022 Appropriations Act] may be used to announce or enforce a mask mandate." *Id.* (emphasis added).

McMaster and Wilson seize on this "do not reject the possibility" language, arguing that the Supreme Court of South Carolina "has spoken" and held "that the Proviso does not actually prohibit all mask mandates in public schools." Opening Br. at 13; *see also id.* ("Whatever trepidation any district may have initially had about enacting one while the Proviso was in effect, *Richland* . . . necessarily removes it."); Reply Br. at 4–5 ("[T]his Court should take the S.C. Supreme Court at its word: The Proviso does not ban mask mandates in public schools . . . ." (cleaned up) (citation omitted)); *id.* at 10 (arguing that the state Supreme Court "has left *no doubt* that mask mandates" are enforceable with federal or local funds (emphasis added)).

But that simply does not follow. Choosing not to reject the possibility of a proposition is not the same thing as accepting that proposition. For example, not rejecting the possibility that Bigfoot might exist surely does not mean accepting that Bigfoot *does* exist. *See* Courtney Taylor, *What 'Fail to Reject' Means in a Hypothesis Test*, ThoughtCo. (Jan. 28, 2019), https://www.thoughtco.com/fail-to-reject-in-a-hypothesis-test-3126424 (observing that as a matter of mathematics and logic, the "'failure to reject' a [proposition] should not be confused with acceptance"). Likewise, the Supreme Court of South

25

Carolina's comment that it did not reject the possibility that a purely federally or locally funded mandate could be imposed does not mean that court endorsed or accepted that approach.

In fact, just weeks before its decision in *Richland*, the Supreme Court of South Carolina in *Wilson ex rel. State v. City of Columbia* likewise declined to "*outright reject the possibility that a local government could impose a mask mandate without contravening [the] Proviso*"—but nevertheless suggested that attempting to partition federal or local funds for a mask mandate would likely be an exercise in futility. 863 S.E.2d at 461 (emphasis added). The court noted that it "*strains credulity*" to argue that a mask mandate could be imposed on public schools "without *any* assistance from school personnel and *without [expending] a penny of state funds*."[5] *Id.* (emphases added).

After all, as Governor McMaster previously explained, "state funds permeate just about everything that the school [system] does." Kinnard, *supra*. That's why Attorney General Wilson believes that any "schools *funded* with State appropriations must not

---

[5] McMaster and Wilson argue that this language was aimed at the specific mask mandate in *Wilson*, "which sought to fine school officials for violations of the city's ordinance." Reply Br. at 4. Not so. The Supreme Court of South Carolina *first* found it improbable that the City of Colombia "will itself fund and enforce the mandate in the City's public schools" without "using any state-appropriated funds to do so." *Wilson*, 863 S.E.2d at 461. It then *separately* noted that, as a factual matter, the City's ordinance actually required school personnel to help enforce the mask mandate or face fines. *Id.* Therefore, the attempt by McMaster and Wilson to limit *Wilson* to its facts must fail—especially given that Governor McMaster himself has argued that *Wilson* should be read to apply broadly to bar "virtually *any*" mask mandate. D. Ct. Docket No. 58 at 3 n.1 (emphasis added).

26

impose or implement mask mandates." J.A. 114 (emphasis added) (quoting Wilson Petition at 13).

The Supreme Court of South Carolina cases of *Wilson* and *Richland* did not change this calculus. At best, they left open the question of whether a purportedly federally or locally funded mandate would violate the Proviso. At worst, they suggested that it would be virtually impossible to impose such mandates "without [spending] a penny of state funds." *Wilson*, 863 S.E.2d at 461. Either way, there remains reason to doubt that school districts will be able to partition their funding streams in a way that avoids legal liability, which creates a predictable chilling effect on school districts that might otherwise consider implementing mask mandates.[6]

McMaster and Wilson counter that segregating funding streams is not as difficult as *Wilson* made it out to be. Reply Br. at 11. Perhaps so. But the Parents are not required to show that it would be *impossible* for school districts to impose mask mandates with the Proviso in place. They are merely required to show that the Proviso has a "*predictable*"

---

[6] To be sure, at least one school district—Charleston County—tempted fate by purporting to implement a mask mandate using only federal or local funding after *Wilson* was decided. *See Update on CCSD Board of Trustees' Decision about Face Coverings*, Charleston Cnty. Sch. Dist., https://tinyurl.com/nw2s9c3e (last visited Jan. 5, 2022). But soon after, private plaintiffs sued to block the school district's mask mandate. *See* Compl., *Cooke v. Charleston Cnty. Sch. Dist.*, No. 2021-CP-10-04295 (S.C. Ct. Com. Pl.). And as support for their subsequent motion for a temporary restraining order, those plaintiffs cited a letter from Attorney General Wilson that (1) suggested that private litigants may sue to enforce the Proviso and (2) interpreted the *Wilson* decision as holding that the Proviso "leave[s] to *parents* the masking decision." Mot. for TRO, Ex. B at 2, *Cooke v. Charleston Cnty. Sch. Dist.*, No. 2021-CP-10-04295 (S.C. Ct. Com. Pl.) (emphasis added). Litigation is currently ongoing, but the plaintiffs recently filed a notice of voluntary dismissal without prejudice.

27

coercive effect on school districts. *Dep't of Com.*, 139 S. Ct. at 2566 (emphasis added). And again, it is "predictable" that school districts barred from using state funds to impose mask mandates won't impose such mandates, especially given the uncertainty over whether the comingled nature of school funding streams would make a federally or locally funded mandate vulnerable to legal challenge. *See, e.g.*, Chase Laudenslager, *Dorchester District Two Not Moving Forward with Mask Requirement Despite Majority Support*, Count on 2 News (Sept. 28, 2021), https://www.counton2.com/news/local-news/dorchester-county-news/dorchester-district-two-not-moving-forward-with-mask-requirement-despite-majority-support/ (Dorchester School District Two noting the "difficult[y of] separat[ing] funds for [a mask mandate] due to comingling of funds" and "[l]egal challenges connected to [the] Proviso" as "support for not implementing a face covering requirement"). In the end, McMaster and Wilson never account for the predictable chilling effect that the Proviso, its enforcement by them, and their own statements have had on curbing school mask mandates.

Even setting aside their previous assertions that the Proviso bans *all* mask mandates in public schools, McMaster and Wilson have taken inconsistent positions on this matter before *this* Court. To be sure, when it suits them, McMaster and Wilson eagerly argue that since federal and local funding is available, school districts retain "the *ultimate authority* to decide whether to require all teachers, students, staff, and visitors to wear masks." Supp. Br. at 17–18 (emphasis added); *see also* Reply Br. at 9 (opining that "the decision whether to enact a mask mandate remains where it has always been: with the school districts");

Opening Br. at 13 (arguing whether students will be required to wear masks "turns on what that school district chooses to do").

But in the same breath, McMaster and Wilson repeatedly state that the "Proviso represents the General Assembly's preference to leave the *ultimate decision* on whether children wear masks in schools *to parents*, *rather than have [schools] decide* whether children must wear masks." Supp. Br. at 5 (emphases added) (citation and internal quotation marks omitted); *accord id.* ("The state legislature has elected to leave the decision [over masking] to parents." (quoting *Wilson*, 863 S.E.2d at 459)); Reply Br. at 13 ("[T]he Proviso represents 'the policy of the state legislature to leave to parents the masking decision' . . . ." (quoting *Wilson*, 863 S.E.2d at 459)); *see also* D. Ct. Docket No. 58 at 8 ("[T]he Governor's consistent message about masks in schools is that parents should have the ultimate say in whether their children wear masks."). But if *parents* have ultimate decision-making authority over whether their children wear masks at school, then *school districts* must lack the ability to impose mask mandates. McMaster and Wilson cannot have it both ways.

In sum, McMaster and Wilson have spent months telling the public, school districts, state courts, and federal courts that the Proviso leaves school districts with no choice: they cannot impose mask mandates, period. McMaster and Wilson have also forcefully argued that any attempt to work around the Proviso by using federal and local funds must fail, since it would be virtually impossible to enforce any mandate without spending a penny of state funds.

Now McMaster and Wilson shamelessly claim exactly the opposite: school districts can still decide to impose mandates, and federal and local funds can easily be used to enforce such mandates. As a result, they argue, the injuries alleged by the Parents are due to the independent decisions made by each school district to impose or not impose a mandate—not the entirely predictable effects of the Proviso or their enforcement of the Proviso. We should not condone this blatant—and convenient—flip-flopping.

### B.

A similar flip-flopping gambit underlies McMaster and Wilson's second argument against causation and redressability. To wit, they claim that under our related Eleventh Amendment jurisprudence, "a proper defendant must be an official who has 'some connection with the enforcement of the act.'" Supp. Br. at 13 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). And they contend neither the "'Governor's general authority' as the State's chief executive [nor] 'the Attorney General's role as a legal advisor'" are sufficiently connected to the enforcement of the Proviso "to make them proper defendants" in this action. *Id.* (quoting *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021)). Remarkably, in proceedings below, Attorney General Wilson went so far as to say that he "has *no* enforcement responsibility as to the Proviso." D. Ct. Docket No. 55 at 1 (emphasis added). And since McMaster and Wilson are not connected to the enforcement of the Proviso, their

30

argument goes, their actions cannot truly be the cause of the Parents' injuries, nor would enjoining them redress those injuries.[7]

That argument flies in the face of McMaster and Wilson's previous statements and actions. Only a few months ago, Attorney General Wilson told the Supreme Court of South Carolina, in no uncertain terms, that "it is the Attorney General's role to bring to the Court's attention violations of the Constitution and the rule of law." J.A. 116 (quoting Wilson Petition at 15). For that reason, "the executive branch, via the Attorney General, *must enforce*" the Proviso's "prohibiti[on] [on] mask mandates in the schools." J.A. 112–13 (emphasis added) (quoting Wilson Petition at 11–12).

True to his word, Attorney General Wilson then sued the City of Columbia to enforce the Proviso in *Wilson* and joined in the defense of the Proviso as an amicus in *Richland*. But "Wilson cannot take such action to specifically enforce the laws at issue and then hope to [defeat causation and redressability] under a theory that he simply has" no

___

[7] McMaster and Wilson baldly claim that a "self-executing funding decision like the Proviso has *no official* subject to federal jurisdiction charged with enforcing it, so there is *no way* for a federal court to review the [Proviso]" at all. Supp. Br. at 13 (emphases added). In other words, no one could *ever* have standing to sue to enjoin the enforcement of the Proviso and budget provisions like it, no matter how blatantly unlawful or unconstitutional they may be. The majority opinion does not address this breathtakingly broad argument, which would seemingly allow state officials to have their cake and eat it too: they can sue to enforce the Proviso when they wish but then retreat behind the fact that the Proviso does not specifically *charge* them with enforcing it when sued themselves.

ability or responsibility to enforce the Proviso.[8] *Bradacs v. Haley*, 58 F. Supp. 3d 499, 513

(D.S.C. 2014) (criticizing Attorney General Wilson for a similar about-face).

---

[8] The majority opinion fails to appreciate the predictable chilling effect of Attorney General Wilson's enforcement efforts. Though it acknowledges that a state official may be properly sued if they have "some connection with the enforcement of the [Proviso]"— which Wilson obviously does—it faults the Parents for failing to *also* show that "any of the districts where their children attend school have rescinded a mask mandate pursuant to a threat from Wilson that he would seek to enforce the Proviso to void that mask mandate." Majority Op. at 12, 14 (quoting *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014)).

In effect, the majority opinion is asking for the Parents to produce a smoking gun when Article III only requires that their injuries be "fairly traceable" to McMaster and Wilson's enforcement efforts. *See Gaston Copper*, 204 F.3d at 161 ("[T]raceability does not mean that plaintiffs must show to a scientific certainty that [a] defendant's [conduct] . . . caused the precise harm suffered by the plaintiffs." (citation and internal quotation marks omitted)); *Dep't of Com.*, 139 S. Ct. at 2566 (stating that "Article III 'requires no more than de facto causality'" (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.))).

Requiring the Parents to show that "Wilson will enforce the Proviso in a manner that *directly* affects them" misunderstands the *indirect* nature of the injury alleged by the Parents: that Wilson's efforts to enforce the Proviso for some districts chilled other school districts from imposing their own mask mandates. Majority Op. at 14. Put differently, the Parents are injured regardless of whether Wilson has sued their children's school districts specifically or the districts next door; his enforcement efforts will predictably deter schools from sticking their own necks out to impose mask mandates. *See* Laudenslager, *supra* (reporting this precise effect on Dorchester District Two).

The majority opinion dismisses this chilling effect as evidently "not [very] strong," since "very few school districts" implemented mandates after the injunction was entered. Majority Op. at 14. If the majority is criticizing the Parents for failing to allege a big enough injury, that is irrelevant to our Article III inquiry. *See Gaston Copper*, 204 F.3d at 156 (holding an injury "need not be large"—"an identifiable trifle will suffice" (citation omitted)). What's more, the fact that *some* school districts—including Chester, Hampton, Jasper, Marlboro, Richland, Sumter, and certain districts in Florence County—*did* impose mandates following the injunction suggests that Wilson's enforcement efforts *were* stopping them from enforcing mask mandates.

Attorney General Wilson weakly counters that the "Attorney General's suit to invalidate Columbia's ordinance did not implicate federal law" but rather only "ensured a municipality followed state funding law." Reply Br. at 6. That's a distinction without difference or relevance. Whether the Attorney General's efforts to enforce the Proviso "implicate[d]" federal or state law is immaterial for standing purposes; the point is that he sought to, and succeeded in, enforcing the Proviso. The fact that it was a municipality sued, rather than a school district, does not dissipate the chilling effect his enforcement efforts may have had on school districts. Under our precedent, in order for a plaintiff "to sue a state officer for an injunction" in an *Ex parte Young* action, "the officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges." *Doyle*, 1 F.4th at 254–55. That is unquestionably the case for Attorney General Wilson.

Governor McMaster has a slightly better argument that he is an improper defendant. Though the Parents note that Governor McMaster "is responsible under South Carolina law for ensuring [that] 'the laws be faithfully executed,'" J.A. 32 (quoting S.C. Const. art. IV, § 15), we have consistently held that the "mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the [validity] of a state statute." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979)). After all, "it is not enough that the officer [sued] possesses the '[g]*eneral authority* to enforce the laws of the state' broadly if the officer cannot enforce the [specific] law at issue." *Doyle*, 1 F.4th at 255 (quoting *Waste Mgmt. Holdings*, 252 F.3d. at 331). However, other

33

arguments made by *McMaster and Wilson themselves* suggest that the Governor *can* enforce the Proviso.

Critically, in their opening brief, McMaster and Wilson argue that the public interest and other equities weigh against an injunction because "the Governor and Attorney General, as well as the State, are *irreparably harmed* . . . whenever 'a State is enjoined by a court *from effectuating statutes* enacted by representatives of its people.'" Opening Br. at 32 (emphases added) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). In other words, McMaster and Wilson admit that (1) they have the power to "effectuat[e]" (enforce) the Proviso and (2) the injunction harms them by barring said enforcement. But McMaster and Wilson cannot simultaneously claim that they have *no* obligation or ability to enforce the Proviso and that they will *also* be irreparably harmed if they are enjoined from enforcing the Proviso.

That's like saying I have no obligation or ability to make my friend stop eating broccoli, but I will be irreparably harmed if you prevent me from stopping him from eating broccoli. If that makes no sense, it's because I just cannot have it both ways—either I *have* the obligation and ability to force my friend to cease his broccoli eating and I *will* be harmed if you stop me from doing so, or I have *no* obligation or ability to do so and I will suffer *no* consequences if you stop me from policing my friend.

Likewise, if Governor McMaster had no responsibility or ability to enforce the Proviso, then he wouldn't suffer any harm from the injunction at all. The injunction would simply prevent him from doing something he already cannot do.

34

But according to McMaster and Wilson, that is not the case; the Governor *can* effectuate the Proviso and, in their words, will be "irreparably harmed" if he is not allowed to. Opening Br. at 32. Thus, the Governor, by his own admission, has "the ability . . . to enforce the [Proviso] under his statutory or constitutional powers," and has "demonstrated[, by negative implication, a] willingness . . . to enforce the [Proviso]." *Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir. 2001) (en banc). That is enough to establish standing to sue him.[9]

---

[9] The majority opinion ducks this conclusion because it assumes—without any citation to the record, the parties' briefs, or legal authority—that the enforcement powers McMaster claims to wield over the Proviso are "*nothing more* than [his] status as the Governor of South Carolina and his general [constitutional] duty to execute state laws," which is insufficient to confer standing to sue him. Majority Op. at 12–13 (emphasis added). But unlike the majority, I do not presume to know the source of authority McMaster claims gives him the power to enforce the Proviso, nor do I presume to know South Carolina law well enough to know whether his claim has merit. I only know that he *himself* claims to wield that authority, which is enough for Article III.

If we are unsure about this conclusion, the proper course of action would be to remand to the district court, not dismiss the Governor from the case entirely. The Governor did not raise standing as a defense in his first motion to dismiss; only the Attorney General did. As a result, the district court only had the opportunity to consider Attorney General Wilson's Eleventh Amendment–adjacent arguments regarding traceability and redressability. Governor McMaster did raise similar concerns as a defense in his second motion to dismiss, but we assumed jurisdiction before the district court had a chance to rule on it.

Typically, we have held "that the district court should have the opportunity to address [Eleventh Amendment–adjacent] issue[s] [like this] in the first instance." *Lytle v. Griffith*, 240 F.3d 404, 411 (4th Cir. 2001). This seems especially appropriate when, as here: (1) the Governor's own inconsistent statements about the scope of his enforcement powers make his "connection, if any, to the enforcement of the [Proviso]" a "disputed" question of state law, *id.* at 410, and (2) the Parents have alleged numerous facts that suggest McMaster may be likely to pursue enforcement, *see* J.A. 32 (reporting that "Defendant McMaster signed the budget legislation containing Proviso 1.108"; McMaster (Continued)

Ultimately, McMaster and Wilson are asking us to dismiss them from the case because they say they are not sufficiently connected to the enforcement of the Proviso—even though Attorney General Wilson has said he "*must enforce*" the Proviso, Wilson *has sued to enforce the Proviso*, and both of them claim they will be *irreparably harmed* if we stop them from enforcing the Proviso. We should reject their inconsistent legal arguments to the contrary.

C.

Finally, McMaster and Wilson engage in a bit of Monday-morning quarterbacking using extra-record evidence to prop up their redressability argument. Specifically, they say that "after the preliminary injunction was entered," six of the seven "school districts named as defendants in this case did not impose mask mandates,"[10] and "[a]t least three of them . . . *affirmatively* decided not to impose a mandate." Opening Br. at 11 (emphasis added). These developments allegedly confirm that "enjoining the Proviso does not make it more likely that the school districts where [the Parents'] children attend school will enact

---

"encouraged the Legislature to enact Proviso 1.108"; the Governor "has publicly advocated for Proviso 1.108 to remain in effect and to be vigorously enforced"; and "Defendant McMaster enacted an Executive Order containing a similar prohibition on mask mandates").

Because the "District Court is [likely] in the best position to address in the first instance the competing questions of fact and state law necessary to resolve the [Governor's enforcement powers,] . . . we [should] remand for that purpose." *Id.* (quoting *Keller v. Prince George's Cnty.*, 827 F.2d 952, 964 (4th Cir. 1987)).

[10] The exception was Charleston County School District, which implemented a mask mandate but allowed it to lapse later in the fall.

36

a mask mandate," so the Parents' injuries must not be redressable by the injunction. *Id.* at 14.

This argument fundamentally misunderstands the law of standing. A plaintiff "need not show that a favorable decision will relieve [their] every injury." *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) (quoting *Larson v. Valente*, 456 U.S. 228, 242–44, 243 n.15 (1982)). Rather, a plaintiff need only show that they "personally would benefit in a tangible way from the court's intervention." *Gaston Copper*, 204 F.3d at 162 (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). For that reason, "removal of even one obstacle to the exercise of one's rights, *even if other barriers remain*, is sufficient to show redressability." *Sierra Club*, 899 F.3d at 285 (emphasis added).

That is precisely what the district court's injunction accomplished. True, the Parents have not gotten *complete* relief from some of the school districts they sued—at least so far[11]—but enjoining the Proviso at least removed "one obstacle" standing in the way of the

---

[11] After letting its earlier mask mandate expire, the Charleston County School District recently decided to temporarily reimpose a mask mandate for the start of classes following winter break. Charleston County School District, *Masks Requirement Effective January 3, 2022*, https://www.ccsdschools.com/site/default.aspx?PageType=3&Domain ID=4&ModuleInstanceID=488&ViewID=6446EE88-D30C-497E-9316-3F8874B3E108 &RenderLoc=0&FlexDataID=38473&PageID=1 (last visited Jan. 6, 2021). With infections from the omicron variant of the novel Coronavirus surging, I doubt it will be the last district or school to do so. *See* Caitlin Herrington, *Positive COVID Rates Jump Sharply Across South Carolina Over Holiday Weekend, DHEC Says*, Greenville News (Dec. 29, 2021), https://www.greenvilleonline.com/story/news/2021/12/29/cdc-covid-19-cases-rate -sharp-increase-omicron-sc/9037711002/ (explaining that the percent positive test rate "jump[ed] up from the 9.2% last reported on Dec. 22" to "23.8%" five days later and attributing this increase to the omicron variant).

mask mandates that the Parents say will protect their children from a dangerous disease.[12]

*Id.* Under our precedent, that "is surely a tangible benefit sufficient to confer standing." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018) (citation and internal quotation marks omitted) (holding that a plaintiff who had left her home school district due to a Bible-study program had standing to seek an injunction against the program because it would provide her the "opportunity" to return to her home district, even though she did not avow that she *would* return to that district).

McMaster and Wilson struggle to counter this point. First, they acknowledge that while "a partial remedy is sufficient for redressability[,] . . . that remedy must provide relief by force of law." Reply Br. at 10. And since the injunction "does not require a single school district to change its mask policy," it "does not" provide such relief. *Id.* But this is just a recycled way of saying that the Parents will not get complete relief via an injunction against the Proviso. And again, that is not required under our precedent. *See Sierra Club*, 899 F.3d at 284–85.

Second, trying a slightly different tack, McMaster and Wilson argue that an injunction "must redress an injury-in-fact 'through a decree of a conclusive character,'"

---

[12] The majority opinion also fails to appreciate this nuance. Like McMaster and Wilson, it faults the Parents for failing to allege that an injunction "would cause the school districts where [the Parents]' children attend school *to impose mask mandates* and thereby enable [the Parents]' children to *return to classes in person*." Majority Op. at 15–16 (emphases added). In effect, the majority opinion is requiring the Parents to show that an injunction would "relieve [their] every injury" and return their children to class. *Sierra Club*, 899 F.3d at 284. In doing so, it neglects to note that enjoining a ban on mask mandates is a "tangible benefit" that gets the Parents one step closer to returning their children to in-person classes. *Deal*, 911 F.3d at 190. That is all that Article III requires.

38

which did not occur here "because school districts already had the authority to enact mask mandates, which is what would redress any injury from schools being too dangerous without mask mandates." Reply Br. at 10 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). But this is just a recycled way of saying that school districts are free to use federal and local funds for a mandate, which, as explained above, is likely illusory.

In the end, satisfying the redressability "requirement is not onerous." *Deal*, 911 F.3d at 189. The Parents need only show that "granting the requested relief [is likely to] at least mitigate . . . the alleged harm." *Sierra Club*, 899 F.3d at 285. And no amount of extra-record, post-hoc evidence can paper over the fact that an injunction against the Proviso would mitigate the Parents' injuries.

## II.

Disabled students already face numerous barriers to fully participating in school. McMaster and Wilson urge us to allow them to escape comeuppance for erecting and enforcing yet another barrier—one that will keep countless children from being able to participate in in-person classes. Shamelessly, they seek to do so based on a series of fatally flawed legal positions supported by baldly inconsistent evidence. Because that undermines the integrity of the judicial process, I must, respectfully, dissent.